694 So.2d 1077 (1997)
STATE of Louisiana, DEPARTMENT OF SOCIAL SERVICES and Alisa King
v.
Daris McCORKLE.
No. 97-CA-13.
Court of Appeal of Louisiana, Fifth Circuit.
April 29, 1997.
*1078 Paul D. Connick, Jr., Terry M. Boudreaux, Alison Wallis, Gretna, for Plaintiffs/Appellees, State of Louisiana, Department of Social Services and Alisa King.
Kenneth M. Plaisance, New Orleans, for Defendant/Appellant, Daris Dwight McCorkle.
Before GAUDIN, BOWES and GRISBAUM, JJ.
BOWES, Judge.
Defendant, Daris McCorkle, appeals from a judgment finding him to be the biological father of the minor child and ordering him to pay child support. We affirm.
This suit was instituted by a petition to prove paternity and obtain child support filed by the State of Louisiana, Department of Social Services and the mother of the child, Alisa King. Blood tests were performed and the results of those tests indicated that there was a 99.998% probability of paternity. After *1079 the results of the blood tests were filed into the record, Mr. McCorkle filed an answer in which he contested the findings of the blood test and in which he denied paternity. Mr. McCorkle filed a second answer with a reconventional demand, alleging that the statutes relative to paternity and child support are unconstitutional.
Prior to the trial of this matter, Mr. McCorkle filed a motion for summary judgment alleging that, by their failure to answer requests for admissions, plaintiffs had established that he was not the father of the child and also that the child support laws were unconstitutional and could not be used to support a judgment against him.
A hearing was had, at which time the trial court denied the motion for summary judgment. The merits were then heard and the trial judge rendered judgment in favor of plaintiffs, finding that the state proved that the defendant is in fact the biological father of the child. The court then set the amount of child support owed by defendant to Ms. King.
On appeal, defendant alleges that the trial court erred in denying his motion for summary judgment.

ASSIGNMENTS OF ERROR NUMBERS ONE, TWO AND THREETHE TRIAL COURT'S FAILURE TO GRANT SUMMARY JUDGMENT BASED ON THE PLAINTIFFS' UNTIMELY ANSWERS TO REQUESTS FOR ADMISSIONS
Defendant mailed to plaintiff through counsel, via certified mail, a set of interrogatories and a request for admissions on July 18, 1996. Included in the request for admissions were the following:
REQUEST FOR ADMISSION OF FACT NO. 4
Please admit that Alisa King did not have sexual intercourse with Mr. Daris Dwight McCorkle in February, March, April, or May of 1982. If you deny this request please state the days in which Alisa King and Mr. McCorkle had intercourse.
REQUEST FOR ADMISSION OF FACT NO. 5
Please admit that in 1981 and 1982, Alisa King had sexual relationship and sexua [sic]; intercourse with other black males.
REQUEST FOR ADMISSION OF FACT NO. 6
Please admit that Sam Wilson is the biological father of Daris Wilson
REQUEST FOR ADMISSION OF FACT NO. 7
Please admit that Sam Wilson had sexual intercourse with Alisa King during the time of Daris Wilson conception.
On August 6, 1996, defendant filed a motion to compel and to have the requests for admissions deemed admitted. Plaintiff filed her response to the request for admissions on August 15, 1996.
In his motion for summary judgment, which was denied by the trial court, defendant urged that, by plaintiff's failure to answer the requests within fifteen days, it was established that he was not the biological father of the child and, therefore, he was entitled to judgment dismissing the suit against him.
A party may serve on another party a written request for admissions of the truth of any relevant matter of fact for the purposes of the pending action. La. C.C.P. art. 1466. Failure of the party to whom the request is directed to answer or object to the request within fifteen days of service conclusively establishes that fact. La. C.C.P. arts. 1467 and 1468. Upon motion, the court may permit the admission to be withdrawn or amended when presentation of the merits will be subserved thereby and no prejudice will result to the party who obtained the admission. La. C.C.P. art. 1468. In Jones v. Gillen, 504 So.2d 575 (La.App. 5 Cir.1987), writ denied, 508 So.2d 86 (La.1987). The court said:
... we agree that hypertechnicalities do not serve justice and that the articles should not be applied automatically when the party answers untimely. Under those circumstances the question should be whether the merits of the action would be subserved by allowing the untimely answer to constitute an intent to withdraw the *1080 answer [admission]. See La. C.C.P. art. 1468; Hoskins v. Caplis, 431 So.2d 846 (La.App. 2 Cir.1983).
The primary issue in this case, from its institution to the trial on the merits, was the issue of defendant's paternity. Plaintiff has continually asserted that defendant is the father, both prior to and subsequent to the requests for admissions. Although the plaintiff did not file a formal motion to withdraw, the trial court could have considered plaintiffs answers to the requests as a withdrawal of the admissions. See Jones v. Gillen, supra. Defendant can show no prejudice from this action, as he has known from the very inception of this suit, that paternity was the key issue.
Accordingly, we find that the trial court did not err in failing to consider the requests for admissions as facts admitted by plaintiff and in denying the motion for summary judgment.

ASSIGNMENT OF ERROR NUMBER 4CONSTITUTIONALITY OF R.S. 9:396. R.S. 9:399 AND C.C. ART. 240
In this assignment of error, the defendant alleges that the "unilateral right of the mother to choose whether to bear a child" in conjunction with the paternity statutes, violates his constitutional right to privacy. It appears to be his contention that the fact that a person may engage in "consensual sex" does not mean that he agrees to "consensual parenthood," and that the enforcement of an order of child support against him without his agreement to become a parent is unconstitutional.
The United States Supreme Court has recognized that a right to privacy, or a guarantee of certain areas or zones of privacy, does exist under the United States Constitution. State v. Chrisman, 364 So.2d 906 (La.1978). Furthermore, La. Const. of 1974, Article I, § 5 expressly guarantees that every individual shall be secure in his "person" against "unreasonable searches, seizures, or invasions of privacy."
This right of personal privacy includes the interest in independence in making certain kinds of important decisions. Among the decisions that an individual may make without unjustified government interference are personal decisions relating to marriage, procreation, contraception, family relationships, and child rearing and education. State v. Perry, 610 So.2d 746 (La. 1992); State v. Gamberella, 633 So.2d 595 (La.App. 1 Cir.1993), writ denied, 94-0200 (La.6/24/94), 640 So.2d 1341.
Defendant herein attacks the statutes which provide for a blood test to establish paternity and which require a biological father to pay support for his child,[1] alleging that these statutes violate his constitutional right to privacy. Defendant has not provided us with any jurisprudence which establish his contentions. To the contrary, our brethren in the First Circuit have addressed this issue in the case of McKenzie v. Thomas, 95-2226 (La.App. 1 Cir. 6/28/96), 678 So.2d 42, 48, writ denied, 96-1855 (La.10/25/96), 681 So.2d 372 and found that no right to privacy is affected by ordering a father to support his illegitimate children:
Although Mr. Thomas attempts to rely on a woman's right to privacy as recognized in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), we are not persuaded. The specific right to privacy recognized in Roe v. Wade is limited to a woman's decision whether or not to terminate her pregnancy, inasmuch as it is the woman who physically bears the child. As has been clearly announced in later decisions by the Supreme Court, the father or spouse does not possess the authority to prevent or require the mother to terminate her pregnancy. See Planned Parenthood v. Casey, 505 U.S. 833, 887-95, 112 S.Ct. 2791, 2826-29, 120 L.Ed.2d 674 (1992); Doe v. Smith, 486 U.S. 1308, 1309-10, 108 S.Ct. 2136, 2137, 100 L.Ed.2d 909 (1988); Planned Parenthood of Cent. Mo. v. Danforth, 428 U.S. 52, 69-71, 96 S.Ct. 2831, 2841-42, 49 L.Ed.2d 788 (1976). Moreover, it is not a comparable right of privacy *1081 which Mr. Thomas seeks, rather it is the release of his financial obligation which he desires. There is no privacy dispute at issue in the instant case. What Mr. Thomas is contesting is his obligation to financially support his child, an obligation recognized by the laws of this State.
We agree with and adopt this decision of the first circuit insofar as the foregoing quoted paragraph is concerned and we to do not believe that these statutes, which provide that a father must provide support for his illegitimate children, interferes with defendant's constitutional right to privacy. Accordingly, we find that the trial judge committed no error in ruling that these statutes do not violate the defendant's constitutional rights.
Nevertheless, assuming a right to privacy is affected, we hold that these statutes, namely La. R.S. 9:396; La. R.S. 9:399; and La. C.C. art. 240 are still not unconstitutional.
The right of privacy is not absolute; it is qualified by the rights of others. Gannett River States Publishing v. Hussey, 557 So.2d 1154 (La.App. 2 Cir.1990), writ denied, 561 So.2d 103 (La.1990). Furthermore, the individual right to privacy is subject to important state interests in regulation. Moity v. Louisiana State Bar Ass'n, 414 F.Supp. 180 (E.D.La.1976), aff'd, 537 F.2d 1141 (C.A.5 1976) citing Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).
Under the Louisiana Constitution, the standard of "strict judicial scrutiny" is applied to review state action which imposes a burden on decisions as fundamental as those included within the right of personal privacy. Under this test, the state action "may be justified only by a compelling state interest, and the state action must be narrowly confined so as to further only that compelling interest." Perry, supra, 610 So.2d at 760.
The State indeed, does have a compelling interest because of its pervasive concern for the welfare of its children. In Interest of J.M., 590 So.2d 565 (La.1991). Here, the right of privacy, if any exists, must yield to the state's compelling interest in protecting and caring for its minor children. Compare also Carlin Communications, Inc., v. South Cent. Bell Telephone Co., 461 So.2d 1208 (La.App. 4 Cir.1984).
Finally, defendant argues that "placing a statutory obligation without a contract of marriage or the consent of the parties is unconscionable and should be unenforceable." Again, defendant cites no support whatsoever for this contention.
La. C.C. art. 239 provides that "... nature and humanity establish certain reciprocal duties between fathers and mothers and their illegitimate children." Pursuant to La. C.C. 240, one of these duties is the duty of support: "fathers and mothers owe alimony to their illegitimate children when they are in need[.]" The duty is established by virtue of the biological relationship, and not because of any contract, or lack thereof, between the father, the mother and/or the child. We have already held that the enforcement of the support right against the biological father of an illegitimate child is not a violation of his constitutional right to privacy. We find that the enforcement of support for the child is not prohibited because the biological father did not agree, by consent or by contract, to become a father or to provide support for his child. Such arguments are ridiculous and repugnant to human society.

CONCLUSION
For the above discussed reasons, the judgment of the trial court is affirmed. All costs are assessed against appellant, Daris McCorkle.
AFFIRMED.
NOTES
[1] The Louisiana Supreme Court has held that the taking of the blood sample pursuant to La. R.S. 9:363 is not an unjustified invasion of privacy or an unreasonable search and seizure. In Interest of J.M., 590 So.2d 565 (La.1991).